## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Q. C. DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-269 Erie |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff, Q. C. Dixon, commenced the instant action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.  Plaintiff filed an application for SSI on February 10, 2004, alleging disability since May 12, 2003, due to asthma, right arm problems, and high blood pressure (Administrative Record, hereinafter "AR", 16; 92-94; 155-56).  Her application was denied and she requested a hearing before an administrative law judge (hereinafter "ALJ") (AR 68-72; 65-67).  Following a hearing held on October 12, 2006, the ALJ issued a decision on April 16, 2007, finding that Plaintiff was not entitled to supplemental security income under the Act (AR 13-24; 28-49).  Plaintiff requested review by the Appeals Council and, after accepting and considering additional evidence, the Appeals Council denied her request for review (AR 11; 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, I will deny the motions and remand the case to the Commissioner for further consideration consistent with this opinion.

### I. BACKGROUND

Plaintiff was born on October 11, 1957 and was forty-nine years old on the date of the ALJ's decision and forty-five at the time of her alleged disability onset date (AR 92; 13-24).  She

graduated from high school taking special education classes, and later had some training in cosmetology (AR 34; 160; 353-54). Plaintiff's work experience includes jobs as an office cleaner and as a babysitter (AR 35-36; 131; 136; 156). She also performed assembly work at a plastics factory after the alleged disability onset date, but the ALJ concluded that this employment did not constitute substantial gainful activity (AR 18, 36). At the time of the administrative hearing, Plaintiff was homeless but had been staying on and off with her sister, and was receiving welfare (AR 34; 40). She had lived alone for several years, however (AR 89; 93; 143; 166; 353).

Plaintiff was diagnosed with asthma at the age of seventeen (AR 40; 149). She has been prescribed Singulair and Advair, and uses an inhaler up to four times a day and a nebulizer at least three times a day (AR 41; 176; 204; 281-83).

On May 12, 2003, Plaintiff was a passenger in a cab that was involved in a motor vehicle accident (AR 270-71). Plaintiff reported to the Emergency Room stating she injured her head, neck, and right knee, and was experiencing pain in those areas (AR 270). A CT scan revealed no acute neck fracture and the right knee x-ray was negative (AR 271). Plaintiff was diagnosed with cervical strain and forehead and knee contusion and discharged with prescriptions for Motrin and Lortab as well as ACE wrap for the knee (*Id.*).

Plaintiff began treating with John Cassara, D.C., for several months subsequent to the accident (AR 232-65). Dr. Cassara's treatment regimen consisted of therapeutic massage, therapeutic exercise, electro-muscle stimulation, and spinal adjustments (AR 236-65). Throughout the treatment program, Plaintiff and Dr. Cassara both report improvement and progress of Plaintiff's condition (*Id.*). Dr. Cassara reduced the frequency of Plaintiff's treatments on October 8, 2003, because of her progress (AR 264).

A cervical spine MRI performed on October 6, 2003, revealed spondylosis with no significant central canal lateral recess or foraminal narrowing (AR 284). Lumbar spine x-rays performed on December 27, 2004, indicated disc space narrowing at L4-L5 without bony lesion or degenerative change (AR 404).

Plaintiff's right knee was also injured in the accident, and x-rays from that date indicated

2

mild degenerative joint disease and large joint effusion (AR 273). Plaintiff was treated for her right knee pain following the accident by Anthony Ruffa, D.O., who gave her a steroid injection of June 30, 2003 (AR 280). A July 24, 2003, MRI of the right knee revealed a transverse tear in the posterior horn medial meniscus, an intact anterior cruciate ligament, a popliteal cyst, and mild degenerative change of the right patella (AR 289). Degenerative changes of the knee were noted in an x-ray report of March 31, 2005 (AR 399). Dr. Ruffa administered a steroid injection to Plaintiff's right knee on June 29, 2005, and referred her to Nick Stefanovski, M.D., for knee surgery (AR 410).

Plaintiff underwent right knee arthroscopic surgery with partial medial meniscectomy and debridement of the medial femoral condyle on August 5, 2005 (AR 373). Plaintiff was prescribed ibuprofen 600mg and Lortab following the surgery, and instructed to compress her knee with ice three to four times per day (AR 372). Plaintiff was still experiencing pain in her knee on September 13, 2005, and Dr. Stefanovski, administered a cortisone injection to help relieve the discomfort (*Id.*). He cleared Plaintiff to return to work the first week of October 2005 (*Id.*). Dr. Stefanovsky continued to treat Plaintiff's knee pain conservatively with injections and pain medication over the next several months (AR 369-71). On November 27, 2006, Plaintiff underwent right partial knee replacement surgery (AR 452-54).

Plaintiff also suffered right arm injuries in the accident, resulting in numbness in her right extremities, for which she endured subcutaneous anterior ulnar nerve transposition surgery (AR 266-74; 298-322). The procedure was reportedly successful in eliminating the numbness in her fingers (*Id.*).

Plaintiff injured her right foot in October 2005, and underwent surgery of the fifth metatarsal in March 2007 (AR 446-63). She reported continuing foot pain after the surgery (*Id.*).

The record also reveals a history of mental impairments. Plaintiff reports attending special education classes while in school (AR 34; 180). The Wechsler Adult Intelligence Scale-Revised (WAIS-R) was administered to Plaintiff on August 16, 1997, in conjunction with a previous application for disability benefits (AR 182-85). That examination revealed a verbal IQ of 72, performance IQ of 80, and a full scale IQ of 75, plus or minus five, indicative of borderline

3

intellectual functioning (AR 183-84).  The Wide Range Achievement Test-III (WRAT-III) was also administered and Plaintiff's score indicated reading at the second grade level, spelling at the first grade level, and arithmetic at the fifth grade level (AR 184).  The examiner noted that Plaintiff performed the tests with adequate effort and that the results were deemed a valid representation of her intellectual functioning (AR 183).  The examiner concluded that Plaintiff could be as independent as others her age, could be socially responsible, and could understand and follow instructions and perform simple, repetitive tasks (AR 185).

On July 18, 2005, Plaintiff was evaluated by Samuel Trychin, Ph.D., at Stairways Behavioral Health Department of Educational and Psychological Services (AR 353-67).  Dr. Trychin administered the WAIS-III and Plaintiff's results yielded a verbal IQ of 67, performance IQ of 70, and full scale IQ of 66, indicative of the borderline to mild mental retardation range of intellectual functioning (AR 355-56).  Performance of the WRAT-R[1] test revealed that Plaintiff was reading and spelling at the second grade level and doing arithmetic at the fourth grade level (AR 356).  Plaintiff was unable to complete the Wonderlic Personnel Test because the vocabulary was beyond her comprehension (AR 354).  Dr. Trychin reported that the test data is considered a valid estimate of Plaintiff's level of functioning (AR 354).  Dr. Trychin indicated that Plaintiff could learn and perform simple, routine tasks under regular supervision (AR 359).

A state agency physician examined Plaintiff on March 13, 2003, and determined that Plaintiff had no limitation regarding lifting, carrying, standing, walking, sitting, pushing, pulling, postural activities, or other physical functions, except for tasting or smelling (AR 214-20).  In addition, Plaintiff should be restricted in exposure to extremes of temperatures, chemicals, dust, fumes, odors, and gases, because of her asthma (AR 220).

---

[1]It seems as though in the 1997 evaluation Plaintiff was administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) test and the Wide Range Achievement Test-III (WRAT-III), and in the 2005 evaluation Plaintiff was administered the Wechsler Adult Intelligence Scale-III (WAIS-III) test and the Wide Range Achievement Test-Revised (WRAT-R).  It is not clear if this is some kind of coincidental typographical error, or if Plaintiff actually performed the different versions of the two tests at the separate examinations.

A Residual Functional Capacity (RFC)[2] assessment was completed on April 9, 2003, by a state agency physician (AR 221-31).  That assessment indicated that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, could stand or walk for six hours in an eight hour workday, could sit for six hours in an eight hour workday, and could push or pull to the same extent that she could lift and/or carry (AR 222).  No postural limitations were established, except that Plaintiff was limited to occasional climbing (AR 223).  Plaintiff should avoid concentrated exposure to extreme cold or heat, and even moderate exposure to fumes, odors, dust, gases, and poor ventilation conditions (AR 225).  The examiner noted that Plaintiff is able to perform most of her activities of daily living and that, based on the medical and non-medical evidence of record, Plaintiff's allegations of the extent of her functional limitations was considered not fully credible (AR 230).

On July 27, 2004, an RFC assessment was completed by a state agency physician, finding that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, could stand or walk for six hours in an eight hour workday, could sit for six hours in an eight hour workday, and could push or pull to the same extent that she could lift and/or carry (AR 324).  Plaintiff was limited to occasional climbing,[3] balancing, stooping, kneeling, crouching and crawling, but no manipulative, visual, communicative, or environmental limitations were found (AR 325-27).  Plaintiff's statements regarding the disabling nature of her impairments were found to be partially credible (AR 331).

A state agency consultant completed a mental RFC assessment form on September 2, 2004, and reported mild limitation in activities of daily living and social functioning, moderate limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation (AR 342).  The consultant noted marked limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, and moderate limitations in Plaintiff's

---

[2]Residual functional capacity is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a).

[3]Except that she should never climb ladders, ropes, or scaffolds.

ability to sustain an ordinary routine without special supervision, and the ability to respond appropriately to changes in the work setting (AR 347-48). No significant limitations were found for the other sixteen areas evaluated relating to Plaintiff's mental fitness for performing regular work activity (*Id.*). The consultant found Plaintiff's allegations to be partially credible (AR 349). The consultant gave great weight to Plaintiff's 1997 IQ scores, and noted no current evidence of emotional problems (*Id.*). The consultant reported that Plaintiff was mentally capable of carrying out routine work (*Id.*).

Plaintiff's activities of daily living consist of watching television, playing cards, gardening, and going to the movies (AR 178). She is able to do her household chores and cook for herself, and go to the grocery store and sometimes to church (AR 177). She is able to handle her money and pay her bills (AR 178).

Plaintiff testified to having memory problems, which is why she had failed to appear for her previously scheduled disability hearing (AR 44; 50-56). Plaintiff has difficulty reading and writing (AR 45). Plaintiff has never had a driver's license, and takes public transportation to her medical appointments (AR 36-37; 143).

The vocational expert testified that a hypothetical individual of Plaintiff's age and education with no past relevant work history who was capable of sedentary work activity that is simple and repetitive in nature, involving routine work processes and settings, precludes the operation of foot controls, and requires no kneeling, crawling, climbing, or balancing could perform the representative jobs of cashier, receptionist, or telemarketer (AR 46). The vocational expert further testified that an employer would not tolerate three or more absences per month for several months or an employee who would be off task ten to fifteen percent of the workday, excluding the usually scheduled breaks and lunch periods, for an extended period of time (AR 46-47).

The ALJ subsequently issued a written decision dated April 16, 2007, which found that Plaintiff had severe impairments of asthma, morbid obesity, degenerative joint disease of the knee, degenerative disc disease, borderline intellectual functioning, and depression (AR 18). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that

meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926) (*Id.*). The ALJ found, based upon his review of the evidence contained in the record, that Plaintiff maintained the RFC to perform sedentary work involving no kneeling, climbing, crawling, or balancing, limited to simple repetitive routine work processes, and precluding the use of foot controls (AR 19). Based on the testimony of the vocational expert, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Plaintiff could perform, and therefore Plaintiff was not under a disability within the meaning of the Social Security Act (AR 23). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 5-8). She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Richardson v. Parales*, 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41

> (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

Plaintiff challenges the ALJ's decision at step three of the sequential evaluation process, arguing that the ALJ erroneously concluded that Plaintiff did not meet the listing requirements for § 12.05 Mental Retardation under section C.

> To meet the requirements of § 12.05C a claimant must I) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22).

*Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003).

Here the ALJ found that Plaintiff does not meet § 12.05C because she "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (AR 19). In making this finding, the ALJ failed to credit evidence in the record that Plaintiff had a verbal IQ score of 67, a performance IQ score of 70, and a full scale IQ score of 66, results which the examiner evaluated as a valid estimate of Plaintiff's level of functioning (AR 354). The ALJ does comment in the section of his decision dedicated to his RFC finding that

> The claimant underwent a psychological evaluation on July 18, 2005. The evaluation was performed by Samuel Trychin, Ph.D., a licensed psychologist. The claimant was administered the WAIS-III test, the Wide Range Achievement Test-Revised (WRAT-R), the Wonderlic Personnel Test and the SCL-90-R. The results of these tests revealed that the claimant's verbal IQ was 67, performance IQ was 70 and full scale IQ was 66. The claimant's reading and spelling skills were at the second grade level and her arithmetic skills were at the fourth grade level. Based on the test scores and examination Dr. Trychin indicated that the claimant had average capability to perform low skilled or unskilled work. Dr. Trychin diagnosed major depression and borderline mild mental retardation.

(AR 21-22).

The only other mention of these results in the ALJ's decision is simply "The claimant's mental disorders such as depression and borderline intellectual functioning only limit her to unskilled or low skilled work.  This is supported by Dr. Trychin [sic] medical opinion." (AR 22).

Nowhere does the ALJ explain why Plaintiff's IQ scores ranging between 60 and 70 were not considered valid with respect to satisfying the first prong of § 12.05C.[4]  Thus, the case clearly must be remanded for an explanation as to why these scores were not considered valid for purposes of satisfying the first prong of § 12.05C.  The ALJ may reject IQ scores that are inconsistent with other evidence in the record, but he must provide a basis for doing so. *Markle*, 324 F.3d at 187.  Such an explanation is absent from the ALJ's decision in the present case.

To satisfy the second prong of § 12.05C a claimant must establish a physical or other mental impairment imposing additional and significant work-related limitations of function. *Markle*, 324 F.3d at 187-88.  The requirements of this prong are met if the ALJ identifies one or more severe impairments in addition to the cognitive impairment at step two of the sequential evaluation.  The Social Security Administration clarified that it always had intended the phrase "to mean that the other impairment is a 'severe' impairment as defined in §§ 404.1520(c) and 416.920(c)." *See  Markle*, 324 F.3d at 188, *quoting* "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed.Reg. 50746, 50772 (August 21, 2000).  In *Markle*, the Court of Appeals held that the ALJ's finding that the claimant had severe

---

[4]The Commissioner in his Brief argues that substantial evidence supports the ALJ's rejection of Plaintiff's IQ scores by pointing to evidence in the record allegedly suggestive that Plaintiff's level of functioning exceeded that indicated by the scores alone.  However, the evidence relied upon by the Commissioner, including the results of an earlier IQ test, Plaintiff's education level and work history, and Plaintiff's history of independent living, was not utilized by the ALJ in rejecting the Plaintiff's IQ scores.  *Post-hoc* justifications are contrary to established precedent that a reviewing court may only consider the ALJ's decision on the grounds on which it was based without reading into it reasoning or conclusions which are not clearly stated. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) ("it is a fundamental rule of administrative law that a reviewing court . . . must judge the propriety of the action solely on the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *see also Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (holding that the district court's decision was contrary to the holding in *Chenery* when it recognized that relevant evidence was not considered by the ALJ and attempted to justify the ALJ's decision by substituting evidence not mentioned by the ALJ, but found in the court's own independent analysis); *O'Connor v. Sullivan*, 938 F.2d 70, 73 (7th Cir. 1991) (relying on *Chenery*, held a reviewing court has "no authority to supply a ground for the agency's decision"); *Reynolds v. Apfel*, 1999 WL 509742, *6-7 (E.D.Pa. Jul. 16, 1999) (relying on *Chenery* and concluding the court was powerless to accept rationale not invoked by the ALJ, but rather proposed by the Magistrate Judge to support the ALJ's decision).

9

impairments in addition to the cognitive impairment, including chronic obstructive pulmonary disease, hypertension, obesity, and gout, established the second criterion under § 12.05C. *Id.* Here, the ALJ found that Plaintiff suffered from the severe impairments of asthma, morbid obesity, degenerative joint disease of the knee, degenerative disc disease, and depression in addition to her cognitive impairment.  Thus, substantial evidence does not support the ALJ's finding that Plaintiff does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function, and therefore this finding will be reversed and need not be revisited on remand.  I find that the second prong of § 12.05C is met.

The final requirement of § 12.05C is that the claimant's impairment manifest itself during the developmental period, *i.e.*, before the age of 22.  *Markle*, 324 F.3d at 187.  The ALJ failed to address the third prong under § 12.05C in making his finding that Plaintiff did not meet the listing.  The United States Court of Appeals for the Third Circuit has held that remand is necessary where the ALJ fails to address that issue:

> We note that here the ALJ may well believe on remand that he should develop the record further - as is his duty - and inquire further into the nature of [the claimant's] special education, or obtain an expert opinion as to the likely onset of the retardation.  Accordingly, we will remand the matter to the ALJ so that he can provide his interpretation of the record on this issue, develop the record further, and make a finding whether [the claimant] meets the third element of a § 12.05(c) listed impairment, namely, whether his retardation commenced before age 22.

*Markle*, 324 F.3d at 189.

The record contains evidence that Plaintiff attended special education classes in school. It also reveals a limited work history.  Two factors often considered when determining whether a claimant has established manifestation of the impairment during the developmental period are enrollment in special education classes during schooling and the existence of work history. *See Vivaritas v. Comm'r of Social Sec.*, 264 Fed.Appx. 155, 160 (3d Cir. 2008); *see also Williams v. Sullivan*, 970 F.2d 1178, 1185 (3d Cir. 1992).  Thus, it will be necessary on remand for the ALJ to make a finding as to whether Plaintiff's cognitive impairment manifested itself during the developmental period.

10

## IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

Q. C. DIXON,              )
                            )
       Plaintiff,      )
                            )
         v.         )      Civil Action No. 08-269 Erie
                            )
MICHAEL J. ASTRUE,   )
Commissioner of Social Security,  )
                            )
       Defendant.    )

<u>**ORDER**</u>

AND NOW, this 8th day of March, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, the Defendant's Motion for Summary Judgment [Doc. No. 11] is DENIED, and the case is remanded to the Commissioner for further consideration consistent with this opinion.

The clerk is directed to mark the case closed.


                                s/ Sean J. McLaughlin
                                United States District Judge

cm: All parties of record.